# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| GREATER BIRMINGHAM MINISTRIES;<br><br>Plaintiff,<br><br>v.<br><br>JOHN H. MERRILL, in his official capacity as Secretary of State of the State of Alabama,<br><br>Defendant. | Civil Action No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Greater Birmingham Ministries ("GBM") files this Complaint for Declaratory and Injunctive Relief against Defendant John H. Merrill, in his official capacity as the Alabama Secretary of State ("Defendant"), for violation of the National Voter Registration Act of 1993 ("NVRA"). Plaintiff alleges as follows:

## INTRODUCTION

1. Defendant has failed to comply with the NVRA for more than 270 days. Defendant's failure to respond to records requests in accordance with the NVRA has undermined GBM's voter outreach efforts ahead of the 2022 election cycle and violated the letter and spirit of the NVRA's Public Disclosure Provision to ensure the accuracy of the voter rolls.

2. As a part of its organizational mission to promote civil rights in and around Birmingham and the State of Alabama, GBM offers assistance with voter registration to Birmingham community members and other Alabamians. This work requires the list of individuals who have been purged from the voter rolls so that GBM can reach out to purged community members and assist those who need to re-register. Additionally, this information enables GBM to

1

monitor Alabama's compliance with the NVRA's prohibition against removing individuals from the voting rolls simply for not voting. 52 U.S.C. § 20507(b)(2).

3. GBM also engages in voter outreach programs for people with felony convictions to help them understand recent changes to Alabama's felony disenfranchisement law and the voting rights restoration process. To accomplish this, GBM must know which individuals have been removed from Alabama's voter rolls or denied voter registration because of a felony conviction. GBM uses this information to conduct outreach to individuals who are eligible or may become eligible to vote, help them apply for rights restoration (where applicable), and encourage them to register or re-register (where eligible). GBM's work also helps ensure that Alabama is complying with the NVRA's mandate that each state "shall . . . ensure that any eligible applicant is registered to vote" in Federal elections if the eligible applicant timely submits a "valid voter registration form." 52 U.S.C. § 20507(a)(1).

4. To further these efforts and pursuant to Section 8 of the NVRA, Plaintiff submitted a pair of records requests to Defendant, seeking: (1) the list of all registered voters removed from the voter rolls after the 2020 election ("Purged Voters Request") and (2) the list of applicants who were denied voter registration or removed from the voter rolls because of felony convictions going back at least two years ("Felony Records Request").

5. Records responsive to the Purged Voters Request are available in electronic form and should be produced to Plaintiff free of charge, pursuant to the NVRA. 52 U.S.C. § 20507(i)(1). Defendant, however, refuses to produce them without payment of over one thousand dollars, an amount not tied to any reasonable photocopying costs to be borne by the State. Indeed, since these records are available electronically, they can be produced without any photocopying costs.

6. Additionally, Defendant refuses to produce records responsive to the Felony Records Request, claiming they are outside the scope of the NVRA. They are not.

7. On January 24, 2022, Plaintiff notified Defendant that their rejections constituted violations of Section 8 of the NVRA. To date, Defendants have not produced the records in compliance with the NVRA—more than six months after the submission of the first request. Twenty-six days have passed since the notice of violation. The next federal primary in Alabama will occur on May 24, 2022.

8. Having complied with the statutory notice requirement, Plaintiff GBM brings this suit to enforce their rights under the NVRA.

## JURISDICTION AND VENUE

9. This action is brought pursuant to the private right of action established by 52 U.S.C. § 20510(b) to address the deprivation of rights secured by the National Voter Registration Act.

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. It also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to grant the declaratory relief requested.

11. This Court has personal jurisdiction over Defendant in his official capacity because he is a citizen and elected officer of the State of Alabama and his principal place of business is in Montgomery, Alabama.

12. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions alleged occurred in this District and Plaintiff's primary place of business is in Birmingham.

13. An actual and justiciable controversy exists between Plaintiff and Defendant.

## PARTIES

### A. Plaintiff

14. Greater Birmingham Ministries ("GBM") is a nonprofit organization founded in 1969 to advocate for civil rights in the Birmingham area. GBM's mission includes advancing and promoting the right to vote for people within its Birmingham community, including individuals with felony convictions. GBM regularly engages in voter registration and outreach to people with felony convictions to encourage them to register to vote and vote. GBM works to ensure that Alabama complies with state and federal voting rights laws and advocates against unlawful denials of the right to vote.

### B. Defendant

15. Defendant John H. Merrill is the Secretary of State of Alabama and is sued in his official capacity. Defendant Merrill is the chief election officer of Alabama. Ala. Code § 17-1-3(a). He is tasked with ensuring the state's compliance with the National Voter Registration Act. Ala. Code § 17-4-60(a).

## FEDERAL STATUTORY BACKGROUND

16. The NVRA was enacted in 1993 to "increase the number of eligible citizens who register to vote," "enhance[] the participation of eligible citizens as voters," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). In passing the NVRA, Congress found that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3).

17. To further its stated goals, the NVRA requires states to comply with certain baseline standards for the administration of voter registration to "ensure that any eligible applicant is registered to vote." 52 U.S.C. § 20507(a)(1).

18. Accurate and complete voter rolls are necessary to guarantee that eligible voters are properly registered and able to vote. As part of the NVRA's overall framework to ensure states are keeping accurate and complete voter rolls, the NVRA imposes strict transparency requirements. In particular, it requires:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1) ("Public Disclosure Provision").

19. The Public Disclosure Provision enables the public to monitor states' compliance with the NVRA's requirements and thereby furthers the federal legislation's purpose of ensuring effective, accurate, and non-discriminatory voter registration practices.

## STATEMENT OF FACTS

### *GBM's Voter Purge Request*

20. On or about May 17, 2021, GBM submitted a records request to Defendant for a list of every voter removed from the active voter rolls after the 2020 election and their contact information for every county in Alabama at no cost to GBM and in a timely manner. ("Purged Voters Request").

21. GBM made this request pursuant to Section 8 of the NVRA, explaining that it made the Purged Voters Request in its efforts to guarantee that no qualified Alabama voter be purged without just cause and adequate notification.

22. On May 25, 2021, Defendant acknowledged receipt of the request. Although Defendant offered to allow GBM to inspect the records in person to "determine if it is a list [GBM] would like to purchase," he stated his office would only provide the records to GBM at a cost of $1,331.40, or 1 cent per name for 133,140 names. Defendant made the cost assessment pursuant to Ala. Code § 17-4-35, which provides that voter registration lists be made public at a "reasonable cost." This assessment is not tied to any reproduction costs that Defendant would incur in providing these records to GBM. Defendant alleged that "[n]othing in the NVRA or U.S. Code provides for our office to produce and make copies of this data at no cost."

23. On or about June 11, 2021, GBM objected to Defendant's request for payment for the Purged Voters Request, explaining that Section 8 of the NVRA only permits charging for covered records to the extent such charges reflect reasonable photocopying costs. Thus, GBM explained that the NVRA does not permit Defendant to charge for the production of an electronic list that will not require photocopies and renewed its Purged Voters Request.

24. On June 23, 2021, Defendant responded to GBM's June 11 letter, confirmed that Defendant has the requested records available in electronic form, and renewed his refusal to fulfill GBM's Purged Voters Request absent payment. Defendant's office asserted that it could charge for any request under state law and asserted that the NVRA permitted Defendant to charge 1 cent per name in the electronic records.

25. On September 7, 2021, GBM restated its position that the Secretary of State's decision to charge for electronic production of these records is not proper under the NVRA.

26. On September 15, 2021, Defendant again offered to allow GBM to inspect the records in person but again refused to produce the Purged Voters Request electronically without payment.

### *GBM's Felony Records Request*

27. In 2017, Alabama passed a law creating a definitive list of felony convictions that take away a person's right to vote. This law confirmed the eligibility of tens of thousands of Alabama citizens with past convictions who formerly lacked clarity on their right to vote. In public statements from the time, Defendant Merrill explained that while he would continue pre-existing efforts to register Alabamans to vote, he would not "notify[] a small percentage of individuals who at some point in the past may have believed for whatever reason they were disenfranchised" about the law change.[1]

28. Despite the clarifying 2017 law, citizens with prior felony convictions continue to report being wrongfully denied voter registration more than five years after the law's passage. One reason for this is the ongoing confusion of county election officials regarding which felony convictions disqualify citizens from registering to vote, resulting in unlawful voter registration denials.[2]

29. GBM's outreach efforts aim to identify and correct erroneous denials of voter registrations, inform Alabama citizens with felony convictions of their eligibility to vote and the process for rights restoration (where applicable), and assist voters with felony convictions in accessing the ballot box. To do this, GBM runs voter outreach programs to work with eligible

---

[1] Sam Levine, *Alabama Won't Help Disenfranchised Citizens Understand If They Can Now Vote*, HUFFINGTON POST (June 21, 2017), https://www.huffpost.com/entry/alabama-moral-turpitude_n_594a8335e4b0177d0b8af45f.
[2] *See e.g.,* Connor Sheets and Sarah Whites-Koditschek, *In Alabama, Some Felons Are Wrongly Being Barred from Voting,* AL.COM (Oct. 30, 2020), https://www.al.com/news/2020/10/in-alabama-some-felons-are-being-wrongly-barred-from-voting.html.

7

members of its community with prior felony convictions to apply for Certificates of Eligibility to Register to Vote and/or register to vote.

30. GBM regularly identifies voters who have been unlawfully removed from the voter rolls or denied registration by reason of the voter's felony conviction. To run this programming and to ensure that, pursuant to the NVRA, all eligible applicants are properly registered to vote in Alabama, GBM needs to know which voters have been removed from the voting rolls or denied registration on the basis of felony convictions.

31. When GBM renewed its Purged Voters Request on or about June 11, GBM additionally requested a list of voter registration applicants and registered voters who have been deemed ineligible and either denied registration or removed from the rolls.

32. Like its Purged Voters Request, GBM expressly made the request pursuant to Section 8 of the NVRA.

33. On June 23, 2021, Defendant denied this request, alleging that it goes beyond the scope of the NVRA: "The NVRA relates to programs and activities for the purpose of ensuring the accuracy and currency of official lists of eligible voters. Your most recent request moves well beyond the NVRA."

34. On September 7, 2021, GBM renewed and narrowed this request under the NVRA and also objected to Defendant's assessment that these records are outside of the purview of the NVRA. In its September 7 letter, GBM narrowed its second request to only include registration applicants whose registrations were rejected because of a felony conviction and voters who were removed from the rolls by reason of a felony conviction (the "Felony Records Request"). GBM's September 7 letter noted that GBM would explore a remedy in federal court if Defendant's office continued its noncompliance with the NVRA.

35. On September 15, 2021, Defendant replied and renewed his refusal of GBM's Felony Records Request stating, "we stand by [our previous letter], and do not feel the need to further elaborate."

### *GBM's NVRA Notices to Defendant Merrill*

36. On December 8, 2021, GBM formally notified Defendant Merrill that his office's failure to produce records in response to GBM's Purged Voters Request and Felony Records Request violates Section 8 of the NVRA. Ex. 1 ("First Notice Letter"). First, GBM notified Defendant that his office's denial of the Purged Voters Request without payment violated Section 8(i) of the NVRA, which does not permit the assessment of costs for production of covered records except for reasonable photocopying costs. *Id.* at 2 (citing 52 U.S.C. § 20507(i)(1)). Where the records can be made available electronically without any reproduction costs, Defendant must do so without imposing fees unrelated to photocopying. Second, GBM notified Defendant that his office's rejection of the Felony Records Request also violated Section 8(i) of the NVRA, which requires states to make "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" available for public inspection. *Id.* at 2. The rejection of registrations and removal of voters due to felony conviction falls squarely within the scope of the Public Disclosure Provision.

37. Defendants did not respond to GBM's First Notice Letter.

38. January 24, 2022 marked 120 days before the next federal election in Alabama, triggering a shorter 20-day notice period under the NVRA. 52 U.S.C. § 20510(b)(2). Because Defendant had not responded to the First Notice Letter, GBM again notified Defendant, through counsel, on January 24, 2022 that his failure to respond to the Purged Voters Request and Felony Records Request constitutes an ongoing violation of the NVRA. Ex. 2 ("Second Notice Letter").

39. GBM reasserted the nature of the NVRA violations and notified Defendant of the 20-day notice period triggered by an impending federal election under the NVRA. *Id.* GBM notified Defendant that his office had 20 days from the Second Notice Letter to respond to GBM's requests before GBM would seek declaratory and injunctive relief. *Id.* at 1, 3.

40. Twenty days from the Second Notice Letter elapsed on Monday, February 14, 2022. This Complaint follows.

## CAUSE OF ACTION

### Count 1: Violation of the National Voter Registration Act, 52 U.S.C. § 20501 *et seq.* – Purged Voters Request

41. Plaintiff re-alleges, as though fully set forth in this paragraph, the allegations set forth above.

42. The records sought by the Purged Voters Request are within the possession, custody, and control of Defendant.

43. The NVRA's Public Disclosure Provision requires that "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," such as those requested by Plaintiffs, be made available to the public for inspection and, where available, copying. 52 U.S.C. § 20507(i)(1).

44. The "absence of a cost provision in the public inspection of the NVRA" means the state must bear the cost of producing electronic and other records. *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1351 (N.D. Ga. 2016). The NVRA's only exception to this pertains to reasonable costs when the requested records must be photocopied. 52 U.S.C. § 20507(i)(1).

45. Defendant does not deny that the records responsive to the Purged Voters Request fall within the scope of the NVRA. Instead, Defendant maintains that GBM may either inspect these records only in person at his office or pay for the electronic records pursuant to Alabama

10

Public Records Law, Ala. Code § 17-4-35. The NVRA, however, preempts state public records laws, requires access to copies of records where available, and only permits charging for reasonable photocopying costs. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 8 (2013) (noting that the Elections Clause grants Congress the power to "supplant" state laws which conflict with federal law, including the NVRA). Defendant does not deny that electronic copies of these records are available. Nor does Defendant contend that he will incur any photocopying costs to produce the electronic records to GBM. Defendant's failure to produce these electronic records free of cost constitutes a violation of the NVRA.

46. Plaintiff complied with the NVRA's notice requirement by providing Defendant with written notice of the violation on December 8, 2021 and again on January 24, 2022. Defendant has failed to correct the violation within the twenty-day notice period set forth in Plaintiff's Second Notice Letter, pursuant to Section 11(b) of the NVRA. 52 U.S.C. § 20510(b)(2).

47. Defendant has violated, and continues to violate, the NVRA by refusing to produce the Purged Voters Records electronically to GBM absent payment of fees unrelated to photocopying costs.

**Count 2: Violation of the National Voter Registration Act, 52 U.S.C. § 20501 *et seq.* –
Felony Records Request**

48. Plaintiff re-alleges, as though fully set forth in this paragraph, the allegations set forth above.

49. The records sought by the Felony Records Request are within the possession, custody, and control of Defendant.

50. The NVRA's Public Disclosure Provision requires the disclosure of all records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). This includes

11

records related to state efforts to ensure no ineligible voters are included on a state's voter rolls, such as documents pertaining to individuals removed or denied registration based upon an alleged prior disqualifying felony conviction.

51. Plaintiff complied with the NVRA's notice requirement by providing Defendant with written notice of the violation on December 8, 2021 and January 24, 2022. Defendant has failed to correct the violation within the twenty-day notice period set forth in Plaintiff's Second Notice Letter, pursuant to Section 11(b) of the NVRA. 52 U.S.C. § 20510(b)(2).

52. Defendant has violated, and continues to violate, the NVRA by refusing to make the Felony Records available for inspection within the meaning of the statute.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and:

A. Declare that Defendant is in violation of the NVRA by refusing to produce records responsive to the Purged Voters Request and Felony Records Request (as defined herein) in the format requested, free of costs unrelated to photocopying;

B. Order Defendant to timely provide Plaintiffs with records responsive to the Purged Voters Request and Felony Records Request in the format requested, free of costs unrelated to photocopying;

C. Retain jurisdiction over this matter to ensure Defendant's compliance with its obligations to produce the Purged Voters Request and Felony Records Request pursuant to the Court's order and the NVRA;

D. Award Plaintiffs their reasonable costs and attorneys' fees incurred in bringing this suit pursuant to 52 U.S.C. 20510(c); and

E.    Grant any and all relief this Court deems just and proper.

This 22nd day of February, 2022.

Respectfully submitted,

| | |
|---|---|
| Danielle Lang* | /s/Joseph Mitchell McGuire |
| Alice Huling* | Joseph Mitchell McGuire |
| Blair Bowie* | McGuire & Associates, LLC |
| Valencia Richardson* | 31 Clayton Street |
| CAMPAIGN LEGAL CENTER | Montgomery, AL 36104 |
| 1101 14th Street NW, Suite 400 | Tel.: 334-517-1000 |
| Washington, DC 20005 | Fax: 334-517-1327 |
| Tel.: (202) 736-2200 | jmcguire@mandabusinesslaw.com |
| Fax: (202) 736-2222 | |
| dlang@campaignlegal.org | |
| ahuling@campaignlegal.org | |
| bbowie@campaignlegal.org | |
| vrichardson@campaignlegal.org | |

*pro hac vice motions forthcoming*