## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| GREATER BIRMINGHAM MINISTRIES, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) |
| JOHN H. MERRILL, in his official capacity as Secretary of State of the State of Alabama, | ) ) ) ) |
| *Defendant*. | ) ) |

Case No. 2:22-cv-00205-MHT-SMD

**SECRETARY OF STATE'S MOTION TO DISMISS COUNT 1**

GBM does not want public inspection. GBM does not want photocopying. GBM has consistently maintained that it wants to own an electronic copy of the records responsive to its Purged Voters Request. Doc. 1-1 at 3 (ninety-day notice); doc. 1-2 at 3 (twenty-day notice); May 31, 2022 Hearing Tr. at 7:19–9:15, 11:18–12:19; doc. 35 ¶¶ 5, 22–29, 41, 50 (amended complaint); *see also* doc. 1 ¶¶ 5, 22–26, 36, 45, 47. Count 1's sole question is legal: whether Congress created a duty to provide an electronic copy of records within the duty to "make available for *public inspection* and, where available, *photocopying* at reasonable cost." 52 U.S.C. § 20507(i)(1) (emphasis added). It didn't. The statute's silence as to electronic copies means that the NVRA does not override State law or limit the Secretary's ability to charge for electronic copies. Nor does this question of statutory

1

interpretation depend on any facts about the type of public inspection that Secretary Merrill makes available. Taking all the factual allegations in the amended complaint as true, GBM has failed to state a claim as to Count 1. Dismissal is proper.

## BACKGROUND

Congress enacted the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501 *et seq.*, to encourage voter registration while "protect[ing] the integrity of the electoral process" and "ensur[ing] that accurate and current voter registration rolls are maintained," 52 U.S.C. § 20501(b). The NVRA is colloquially known as "motor voter" because one portion, 52 U.S.C. § 20504, requires States to incorporate an opportunity to register to vote into the driver-license process. The NVRA also addresses registration by mail, 52 U.S.C. § 20505, and registration at designated agencies, 52 U.S.C. § 20506.

Congress recognized that registering voters is only one part of the equation. In 52 U.S.C. § 20507, the statute at issue here, Congress not only required timely registration of eligible applicants but also recognized that persons already on the voter rolls could die, move, request that they be removed from the rolls, or become ineligible due to criminal conviction or mental incapacity. Addressing two of these events, Congress required that the States "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of--(A) the death of the registrant; or (B) a change in the

residence of a registrant . . . ." 52 U.S.C. § 20507(a)(4). This program, and any others that a State might undertake to ensure the accuracy and currency of the voter registration lists, must "be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965" and must not remove a voter solely for failure to vote. 52 U.S.C. § 20507(b). Critically here, Congress required that, with exceptions, "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" be "maintain[ed] for at least 2 years" and "ma[d]e available for public inspection and, where available, photocopying at a reasonable cost[.]" 52 U.S.C. § 20507(i)(1).

Pursuant to this provision, GBM submitted a records request to the Secretary of State's Office on or about May 17, 2021. Doc. 35 ¶¶ 20–21. GBM requested "a list of every voter removed from the active voter rolls after the 2020 election and their contact information for every county in Alabama at no cost to GBM and in a timely manner." *Id.* ¶ 20. Secretary Merrill acknowledged receipt of this "Purged Voters Request" on May 25, 2021. *Id.* ¶ 22. The requested records appear to refer to the specific program established in the NVRA for removing voters based on death or a change in residence. Thus, in compliance with the NVRA's public disclosure provision, Secretary Merrill offered the records for public inspection, *id.* ¶¶ 22, 29, 50. Going beyond the statutory requirements, Secretary Merrill also notified GBM that it could purchase an electronic copy pursuant to Ala. Code § 17-4-35 at a fee of

3

one cent per name, which amounted to $1,331.40 for 133,140 names, *id.* ¶ 22. *See also* ALA. CODE § 17-4-38(b).

In a letter dated June 11, 2021, GBM objected to Secretary Merrill's response. Doc. 35 ¶¶ 26, 36. In that letter, GBM additionally requested "a list of voter registration applicants and registered voters who have been deemed ineligible and either denied registration or removed from the rolls." *Id.* ¶ 36. On June 23, 2021, Secretary Merrill responded to what would eventually become the "Felony Records Request" by denying the request as beyond the NVRA's scope. *Id.* ¶ 38. In a letter dated September 7, 2021, GBM "narrowed its second request to only include registration applicants whose registrations were rejected because of a felony conviction and voters who were removed from the rolls by reason of a felony conviction." *Id.* ¶ 39. Secretary Merrill reiterated his positions as to both requests on September 15, 2021. *Id.* ¶¶ 29, 40.

By letter dated December 8, 2021, GBM, through counsel, sent a ninety-day notice to Secretary Merrill. Doc. 35 ¶ 41; doc. 1-1; *see also* 52 U.S.C. § 20510(b). A second notice, dated January 24, 2022, invoked a twenty-day fuse. Doc. 35 ¶ 43. GBM filed suit on February 22, 2022, doc. 1, and amended its complaint on June 2, 2022, doc. 35.

The amended complaint continues to have two counts. In Count 1, GBM alleges that Secretary Merrill violated the NVRA "by refusing to produce the Purged

4

Voters Records electronically to GBM absent payment of fees unrelated to photocopying costs." Doc. 35 ¶ 53; *see also id.* ¶¶ 46–52. In Count 2, GBM alleges that Secretary Merrill violated the NVRA by determining that the Felony Records Request fell outside the scope of the NVRA. *Id.* ¶ 41; *see also id.* ¶¶ 54–59. This motion pertains solely to Count 1.

## LEGAL STANDARD

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" and requires more than "labels and conclusions," "a formulaic recitation of the elements," or "naked assertions." *Id.* (quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007)). In ruling on a motion to dismiss, courts must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008). But this rule "is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678.

## ARGUMENT

The heart of this litigation is the meaning of 52 U.S.C. § 20507(i), which is entitled "Public disclosure of voter registration activities." It provides:

  (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

  (2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

52 U.S.C. § 20507(i).

  By its plain, unambiguous text, subsection (i) requires the State to make certain records available for (1) "public inspection" and (2) "where available, photocopying at a reasonable cost." 52 U.S.C. § 20507(i)(1). GBM does not allege that Secretary Merrill failed to comply with these requirements. Indeed, the amended complaint recognizes that Secretary Merrill offered public inspection. Doc. 35 ¶¶ 22, 29. Instead, GBM's theory is that Secretary Merrill violated the NVRA by failing to provide an electronic copy "absent payment of fees unrelated to photocopying costs." *Id.* ¶ 53. The Court should reject this novel theory.

  Because the NVRA is silent about electronic copies as a method of public disclosure—addressing only public inspection and photocopying—GBM's theory cannot be correct. The NVRA does not require Secretary Merrill to make electronic

copies available, and it does not speak to any costs that the Secretary may impose should he make electronic copies available. Thus, GBM's contention that photocopying is the "only exception" that would allow Secretary Merrill to charge for records, doc. 35 ¶ 49, is a false premise that is inconsistent with the statutory text. Because the NVRA's silence about electronic copies is unambiguous, this court need not look further. *See Iberiabank v. Beneva 41-I, LCC*, 701 F.3d 918, 924 (11th Cir. 2012) ("We look first to the text of the statute. If the text of the statute is unambiguous, we need look no further." (internal citation omitted)); *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 177 (2004) ("The inquiry begins with the statutory text, and ends there as the text is unambiguous.").

Nonetheless, that silence makes two related points true. First, because the NVRA has nothing to say about the costs that a State can impose for electronic copies, this Court need not reach the issue of whether Secretary Merrill's fee of one cent per name for electronic copies is reasonable. Second, that silence defeats GBM's conflict-preemption argument. Alabama law generally requires Secretary Merrill to charge a reasonable reproduction cost for electronic copies. ALA. CODE § 17-4-38; *see also* ALA. CODE § 36-14-3; ALA. CODE § 17-4-35(10). Where the NVRA is silent about electronic copies, there can be no conflict. *See True the Vote v. Hosemann,* 43 F. Supp. 3d 693, 732 (S.D. Miss. 2014) ("If the NVRA does not mandate universal disclosure, then the two laws do not conflict, there is no

preemption, and the Mississippi law requiring redaction of birthdates controls." (footnote omitted)). State law survives and thus controls.

This Court must also reject GBM's atextual theory that the NVRA requires "meaningful" disclosure. Doc. 18 at 7, 8, 9; Hearing Tr. at 7:9–8:25. The theory apparently goes that free electronic copies are the only way to provide meaningful disclosure. But "a matter not covered is to be treated as not covered." ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012). Congress did not say that "meaningful disclosure" is required and leave it up to the courts to decide what that means (and to continuously rewrite the statute as technology progresses). *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 456 (1984) ("It may well be that Congress will take a fresh look at this new technology, just as it so often has examined other innovations in the past. But it is not our job to apply laws that have not yet been written."). Congress decided that public inspection and photocopying, where available, provide meaningful disclosure.

GBM cannot shoehorn free electronic copies into "photocopying" or "public inspection" either. An electronic copy is plainly distinct from a photocopy, which is "a copy of usually printed material made with a process in which an image is formed by the action of light usually on an electrically charged surface," *Photocopy*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/photocopy (last

visited June 13, 2022). "Within the meaning of a statute authorizing the recovery of costs for photocopying, the term 'photocopying' did not embrace digital electronic reproduction contained on electronic media." 20 C.J.S. *Costs* § 109 (2022); *see also Zurich Ams. Ins. Co. v. Wis. Physicians Srvs. Ins. Corp.*, 743 N.W.2d 710, 721 (Wis. Ct. App. 2007) (holding that "'photocopying' must be narrowly construed to include only hard copy photocopies, rather than electronic imaging" because "[a]lthough both serve essentially the same ultimate purpose, they are not physically the same").

The Eleventh Circuit agrees. In the context of taxable costs under 28 U.S.C. § 1920, the court held that "copies of papers" meant "reproductions involving paper in its various forms." *Arcadian Fertilizer, L.P. v. MPW Indus. Srvs., Inc.*, 249 F.3d 1293, 1296–97 (2001). Like the Supreme Court instructed in *Sony Corp.*, *see* 464 U.S. at 456, the Eleventh Circuit did not see fit to rewrite the statute to comport with technological advancements: "Until Congress sees fit to amend the language of § 1920 to include the innovative technologies currently used in the production of demonstrative exhibits, computer animations and videotape exhibits are not taxable because there is no statutory authority," *Arcadian Fertilizer*, 249 F.3d at 1297–98 (citation omitted). Thus, Congress's use of "photocopying at a reasonable cost" does not encompass free electronic copies.

So too for public inspection. "Inspect" means "to view closely in critical appraisal" or "look over." *Inspect*, MERRIAM-WEBSTER, https://www.merriam-

9

webster.com/dictionary/inspect (last visited June 13, 2022). "Public inspection" refers to an in-person viewing; it does not mean being sent an electronic copy. Indeed, Rule 34 of the Federal Rules of Civil Procedure distinguishes between "inspect[ing]" and "copy[ing]" in subsection (a)(1). Congress's use of "public inspection" in other federal statutes confirms that the term refers to appearing in person at a designated place and viewing the records made available. *See, e.g.*, 26 U.S.C. § 6110 (IRS) ("the text of any written determination and any background file document relating to such written determination shall be open to public inspection at such place as the Secretary may by regulations prescribe"); 16 U.S.C. § 410mm (Great Basin National Park) ("The map shall be on file and available for public inspection in the offices of the National Park Service, Department of the Interior, and the Office of the Superintendent, Great Basin National Park, Nevada."); 26 U.S.C. § 6104 (IRS) (various documents "shall be open to public inspection at the national office of the Internal Revenue Service"); 42 U.S.C. § 10711 (State Justice Institute) ("The report of the annual audit shall be filed with the Government Accountability Office and shall be available for public inspection during business hours at the principal office of the Institute."); 16 U.S.C. § 1244 (National Trails System) ("Insofar as practicable, the right-of-way for such trail shall comprise the trail depicted on the maps identified as 'Nationwide System of Trails, Proposed Appalachian Trail, NST-AT-101-May 1967', which shall be on file and available

for public inspection in the office of the Director of the National Park Service."). To conclude that public inspection requires Secretary Merrill to make electronic copies available ignores an obvious difference in plain meaning.

GBM has tried to do just that. It argued in the initial motion-to-dismiss briefing that "all other courts addressing [52 U.S.C. § 20507(i)(1)] have "assumed" that "public inspection plainly requires electronic production." Doc. 18 at 7; *see also id.* at 10 ("courts have consistently presumed that 'disclosure' requires the production of the records at issue"). But GBM has only mustered two nonbinding cases, neither of which actually support the assertion.

GBM cited *True the Vote* for the proposition that the court "agreed with Mississippi that the state complied with the Public Disclosure Provision after it produced certain covered records in electronic form." Doc. 18 at 10 (citing 43 F. Supp. 3d at 723). It is unclear how the cited discussion, which contains part of a section on the NVRA's applicability to the Mississippi Voter Roll where there "[wa]s no live controversy," *True the Vote*, 43 F. Supp. 3d at 723, supports the proposition. The court assumed that the Mississippi defendants agreed that the voter roll was disclosable because they did not discuss the issue in their opposition brief, *id.* at 723 n.139, and the issue was moot because the president of True the Vote "testified that True the Vote already ha[d] a copy of the Voter Roll[,]" *id.* at 724.

11

Thus, the court did not face the question of whether public inspection requires providing electronic copies.

*Project Vote, Inc. v. Kemp* doesn't help GBM either. *See* 208 F. Supp. 3d 1320 (N.D. Ga. 2016). GBM says that "Georgia proceeded under the assumption that 'making available' the covered records required actual [electronic] production of those records, and the district court agreed." Doc. 18 at 10 (citing *Kemp*, 208 F. Supp. 3d at 1350). Again, by relying on an alleged assumption, doc. 18 at 10, GBM implicitly recognizes that the court made no actual determination. Diving into the facts, it is plain that the costs and burdens at issue in *Kemp* were entirely different from the one-cent-per-name charge for electronic copies responsive to the Purged Voters Request.

The Georgia court was focused on the costs associated with *public inspection* of the records in the context of balancing the equities for a preliminary injunction. *Kemp*, 208 F. Supp. 3d at 1350. The court explained: "Defendant chose to contract a third party to create the Database, and now claims that it is unduly burdensome to fulfill his NVRA obligations to make available certain Section 8(i) [52 U.S.C. § 20507(i)] Records that are resident on the Database." *Id.* The court referred to the database's design and security concerns, *id.* at 1351, and there was testimony from a State witness "that to provide the records in the database format they are in

12

currently would require the creation of an entirely new database, which is 'usually [a] multi-million dollar exercise[,]'" *id.* at 1351 n.45 (quoting deposition testimony).

Later developments in the *Kemp* case are also revealing. Almost four months after the decision, Georgia filed a motion to dismiss for lack of jurisdiction. *Kemp*, 1:16-cv-02445-WSD, ECF No. 50-1. Georgia stated that it had "fully complied with the NVRA's public disclosure provision," *id.* at 4, by "install[ing] a permanent public terminal at the Office of the Secretary of State where any member of the public may now access *all* non-confidential information in the state's voter registration database[,]" *id.* at 2. This in-person public inspection did not involve providing the plaintiff with an electronic copy; members of the public could "utilize a computer and *view* the election database." *Id.* at 6 n.1 (emphasis added). Thus, it seems quite *un*likely that Georgia "assumed" that public inspection required handing over free electronic copies when it argued in its motion that "nothing in the NVRA requires more than 'public inspection' and 'photocopies' where available, and at reasonable cost." *Id.* at 7. Any notion that *Kemp* supports GBM's atextual theory is incorrect.

GBM also relies on *Kemp*'s assertion, *see* doc. 35 ¶ 49, that "[t]he absence of a cost provision *in the public inspection provision* of the NVRA—and its inclusion in other record disclosure laws—suggests Congress intended States to shoulder the burden about which Defendant now complains." *Kemp*, 208 F. Supp. 3d at 1351

13

(emphasis added). First, given the discussion above, it is plain that the court was talking about Georgia's costs in making its records available for public inspection—not the costs that Georgia may charge for providing any kind of copy. Second, the court's reference would be nonsensical if it referred to every method of public disclosure (and not just public inspection) considering that § 20507(i)(1) contains an explicit cost provision for photocopying. That is, the *Kemp* court could not have meant that the State may never charge any fee for public disclosure by producing a copy when the statute explicitly says that, where photocopying is available, it shall be at a reasonable cost.

Thus, there is no consensus among the courts that have looked at this issue. GBM has merely overread two nonbinding district court decisions where the issue was not discussed. Even if there was such consensus, this Court should reject any consensus that guts the plain meaning of "public inspection." Instead, this Court should take its lead from the many other statutes where Congress used similar language to indicate an in-person viewing of records at a designated location. That is the plain meaning of public inspection.

## CONCLUSION

The text is unambiguous. Congress required public inspection and, where available, photocopying at a reasonable cost. Section 20507(i)(1) contains no hidden duty to provide electronic copies. It's silent. That silence means that the NVRA does

not govern the costs that Secretary Merrill may impose when he makes electronic copies available. And that silence means that the NVRA cannot pre-empt State law, which generally requires Secretary Merrill to charge a fee for electronic copies. Nor can GBM shoehorn electronic copies into "photocopying" or "public inspection" without ignoring obvious differences in plain meaning. Because GBM has failed to allege that Secretary Merrill has not made the records responsive to its Purged Voters Request available for public inspection or photocopying, GBM has failed to state a claim under Count 1. Secretary Merrill's motion to dismiss Count 1 should thus be granted.

Respectfully submitted,

Steve Marshall
   *Attorney General*

s/Benjamin M. Seiss

James W. Davis (ASB-4063-I58J)
   *Deputy Attorney General*

Misty S. Fairbanks Messick (ASB-1813-T71F)
Benjamin M. Seiss (ASB-2110-O00W)
   *Assistant Attorneys General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: 334.242.7300
Jim.Davis@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

**Counsel for Secretary Merrill**

**CERTIFICATE OF SERVICE**

I certify that on June 15, 2022, I filed the foregoing document electronically via the Court's CM/ECF system, which will send a copy to all counsel of record.

<u>Benjamin M. Seiss</u><br>
***Counsel for Secretary Merrill***