IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

GREATER BIRMINGHAM          )
MINISTRIES,                 )
                            )
      Plaintiff,            )
                            )        CIVIL ACTION NO.
      v.                    )        2:22cv205-MHT
                            )            (WO)
JOHN H. MERRILL, in his     )
official capacity as        )
Secretary of State of the   )
State of Alabama,           )
                            )
      Defendant.            )

OPINION

Plaintiff Greater Birmingham Ministries (GBM) filed this lawsuit claiming that defendant Alabama Secretary of State John Merrill violated the public-inspection provision of the National Voter Registration Act (NVRA), 52 U.S.C. § 20507(i), by refusing to disclose two categories of records--one concerning people removed from Alabama's voter rolls due to a disqualifying felony conviction and the other concerning people whose voter-registration applications were denied due to a felony conviction--and by failing

to send to GBM those two categories of records, as well as a third category concerning all people removed from the voter rolls after the 2020 general election. GBM also contends that the Secretary is required to provide these records in digital form, either for free or at a reasonable price. GBM has properly invoked the jurisdiction of the court pursuant to 52 U.S.C. § 20510(b) and 28 U.S.C. § 1331. Based on the evidence presented, the court finds in favor of GBM on all of its claims.

I.

The procedural background of this case is as follows:

February 22, 2022: Complaint filed in the Northern District of Alabama.

March 11, 2022: Secretary Merrill filed a motion to transfer venue to the Middle District of Alabama.

April 13, 2022: The case was transferred to the

2

Middle District of Alabama.

May 16, 2022: Oral argument on the Secretary's motion to dismiss.

May 31, 2022: The court denied the Secretary's motion to dismiss.

June 2, 2022: GBM filed an amended complaint.

June 23, 2022: The court denied the Secretary's second motion to dismiss.

July 7, 2022: The Secretary filed his answer to the amended complaint.

July 13, 2022: Pretrial conference held.

July 28 & 29, 2022: Trial held.


II.

A.

The public-inspection provision of the NVRA provides that: "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable

3

cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered." 52 U.S.C. § 20507(i)(1).

### B.

In the spring of 2021, GBM sent Secretary Merrill a series of letters requesting three categories of records in digital form:

(1) Records created in the two years prior to June 11, 2021--and in the two years prior to that, if Secretary Merrill maintains such records--concerning people removed from Alabama's voter rolls because of a disqualifying felony conviction, including each person's name, address, phone number, and current

**4**

registration status.

(2) Records created in the two years prior to June 11, 2021--and in the two years prior to that, if Secretary Merrill maintains such records--concerning people whose applications to register to vote were denied because of a disqualifying felony conviction, including each person's name, address, phone number, and current registration status.

(3) Records concerning people removed from Alabama's voter rolls after the 2020 general election, including each person's name, address, phone number, and current registration status.

Secretary Merrill refused to provide the first and second categories of records but offered to provide the third category at a price of one cent per voter, for a total of $1,123.10.  He also offered to allow GBM to inspect the third category of records in person at his office to "determine if it is a list [GBM] would like to purchase."  Joint Ex. 2 (Doc. 72-57).

GBM responded by notifying Secretary Merrill, as it was required to before bringing suit, *see* 52 U.S.C. § 20510(b)(1) & (2), that, by refusing to provide the first and second categories of records and by charging a fee for the third, he had violated the public-inspection provision of the NVRA. Then, after allowing Secretary Merrill the requisite period of time to cure the alleged violation, *see id.* § 20510(b)(2), it sued.

## C.

The court held a bench trial on July 28 and 29 at which the parties presented evidence establishing the following:

Secretary Merrill maintains all of the information that GBM has requested in a digital database called PowerProfile, where he stores a variety of information relating to Alabama's voter rolls. He can prepare reports--sometimes with the assistance of the company

6

that makes PowerProfile--containing subsets of the
information in the database.  He regularly sells these
reports to the public.  If the report is small enough,
he emails it to the purchaser.  Otherwise, he uses a
data-sharing tool such as DropBox.

Secretary Merrill does not maintain on paper the
information that GBM has requested.  He could print the
information but doing so would require some formatting
and each voter's information would occupy at least one
page (and likely more).

In response to this lawsuit, Secretary Merrill
created a public-inspection policy.  Under this policy,
people wishing to view voter records may do so on a
computer in his office for up to four hours per day.
"Limited notes" are allowed but "word-for-word copying"
of the records is not.  July 29, 2022 Rough Draft Trial
Tr. at 69-70.  (It is pointedly unclear when notetaking
crosses the line into copying.)  To protect Secretary
Merrill's computers from viruses or other malicious

software, no flash drives are allowed in the inspection
room and a staff member must be present at all times.
It is more costly for Secretary Merrill to enforce this
new policy than it would be for him simply to send
digital records to members of the public who request
them.


### III.

GBM's complaint raises three questions: (1) whether
the records that GBM has requested concerning people
removed from Alabama's voter rolls because of a
disqualifying felony conviction, or denied registration
because of a disqualifying felony conviction, fall
within the scope of the NVRA's public-inspection
provision; (2) whether Secretary Merrill must send to
GBM in digital form both of those sets of records, as
well as the requested general records about voters
removed from the voter rolls; and (3) whether the NVRA
requires Secretary Merrill to provide all three sets of

records for free or at a reasonable price.

### A.

The court finds that the records that GBM has requested concerning people removed from Alabama's voter rolls because of a disqualifying felony conviction, or denied registration because of a disqualifying felony conviction, fall within the scope of the NVRA's public-inspection provision.

The Court of Appeals for the Fourth Circuit is, as far as this court is aware, the only federal court of appeals to have ruled on the question of whether the NVRA's public-inspection provision applies to records akin to those GBM seeks. In *Project Vote/Voting for America, Inc. v. Long*, that court held that records concerning rejected voter-registration applications fall within the scope of the NVRA's public-inspection provision because "the process of reviewing voter registration applications is a 'program' and

9

'activity'" that is "plainly 'conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters,'" 682 F.3d 331, 335 (4th Cir. 2012) (quoting 52 U.S.C. § 20507(i)(1) (originally enacted as 42 U.S.C. § 1973gg-6(i)(1))), and because the NVRA's mandate that "all" records be made available for public inspection "suggests an expansive meaning," *id.* at 336 (quoting *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 290 (4th Cir. 1998)). For the same reasons, that court later held in *Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections* that records relating to the removal of noncitizens from a State's voter rolls fall within the scope of the NVRA's public-inspection provision. 996 F.3d 257, 266 (4th Cir. 2021).

This court finds the Fourth Circuit's reasoning persuasive and applicable here. Alabama law requires that individuals convicted of a disqualifying felony

10

offense be purged from the statewide voter-registration list on a continuous basis, *see* Ala. Code § 17-4-3, and that voter-registration applications from individuals with disqualifying felony convictions be denied, *see id*. §§ 17-3-30, 17-3-30.1, 17-3-54. In complying with these mandates, Secretary Merrill acts to ensure the accuracy and currency of official lists of eligible voters, for the rolls can be neither current nor accurate if they contain people who are legally prohibited from voting. Records relating to the denial of voter-registration applications from individuals with disqualifying felony convictions and to the removal from the voter rolls of individuals convicted of disqualifying felony offenses therefore fall within the scope of the public-inspection provision.

Secretary Merrill offers several arguments to the contrary, none convincing. First, he argues that, because the NVRA contains a provision relating to the removal of voters from the voter rolls because they

11

have moved or died, *see* 52 U.S.C. § 20507(a)(4), the
public-inspection provision should be read to pertain
only to records relating to the removal of voters from
the voter rolls because they have moved or died.  But
the public-inspection provision contains no such
limitation; to the contrary, as the Fourth Circuit
recognized, its reference to "all records" indicates
that its reach is broad. *See Project Vote*, 682 F.3d at
336.

Second, he argues that, because the NVRA excludes
programs relating to the removal of felons from the
voter rolls from a provision requiring the States to
complete any programs for removing ineligible voters
from their voter rolls no later than 90 days before a
federal election, *see* 52 U.S.C. § 20507(c)(2); *id.*
§ 20507(a)(3)(B), the public-inspection provision
should be read to exclude records relating to the
removal of felons from the voter rolls.  Again,
however, the public-inspection provision contains no

12

such exception.  And one might infer from the fact that the NVRA expressly excludes programs related to the removal of felons from its 90-day bar on removal activities that, if Congress had intended to exclude records relating to the removal of felons from the scope of the public-inspection provision, it would have said so.

Third, he argues that, because the Federal Election Commission (FEC) published a guide in 1994 on implementing the NVRA in which it included a discussion of the public-inspection provision under the heading, "The Accountability of List Maintenance Activities," Def.'s Ex. 1 (Doc. 79-1) at 88-89, and because the Department of Justice (DOJ) explains on its website that the NVRA requires States to conduct programs and activities related to "list maintenance," Def.'s Ex. 4 (Doc. 79-4) at 7-8, the public-inspection provision should be read to pertain only to records relating to "list maintenance," a term that, according to Secretary

13

Merrill, does not refer to denials of
voter-registration applications. This argument (like
Secretary Merrill's first two) is a non sequitur. Even
assuming that the FEC's 1994 guidance and DOJ's website
are authoritative--and that Secretary Merrill is
correct that the term "list maintenance" does not
include the denial of voter-registration applications--
it does not follow from the FEC's recognition that the
public-inspection provision relates to "list
maintenance" activities or DOJ's recognition that the
NVRA requires States to conduct programs relating to
"list maintenance" that those entities understood the
public-inspection provision to pertain only to records
relating to "list maintenance" activities. That would
be a suspect understanding because, yet again, the
public-inspection provision contains no such limitation
and, as GBM points out, if the provision did not
pertain to records relating to voter registration, its
express exception for "records relat[ing] to a

**14**

declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered," 52 U.S.C. § 20507(i)(A), would be surplusage.

Fourth, he argues that, because the FEC's 1994 guidance advises that, "As a matter of prudence, though not as a requirement of the [NVRA], States might ... want to retain ... all records of removals from the voter registration list--the date and the reason," Def.'s Ex. 1 (Doc. 79-1) at 89, 140, the public-inspection provision should be read to exclude records relating to removals from the voter rolls.  As Secretary Merrill admits, however, the FEC offered no explanation for its assumption that the public-inspection provision does not require States to retain records of removals from the voter rolls. Absent any other compelling reason why the public-inspection provision should be read to exclude such records, the court declines to adopt such a

reading.

Fifth, he argues that he is not required to disclose the records that GBM seeks because the public-inspection provision does not require him to create records but merely to disclose records that he already maintains--and because to respond to GBM's request he would be required to extract (or, alternatively, omit) a subset of information from the PowerProfile database, thereby creating a new record. By this logic, the public-inspection provision would require Secretary Merrill, in response to a request for any subset of information in the PowerProfile database, to either disclose the entire database or nothing at all. If Secretary Merrill wishes to disclose the entire database, so be it, although he should still redact certain "uniquely sensitive information" like voters' social security numbers. *Pub. Interest Legal Found., Inc.*, 996 F.3d at 267 (quoting *Project Vote*, 682 F.3d at 339). But the second of these

options--disclosing nothing at all--is off the table.

Finally, he argues that, if the court were to hold that the public-inspection provision applies to the records GBM seeks, it would allow "less benevolent institutions" to seek "massive amounts of electronic data." Def.'s Pretrial Brief (Doc. 80) at 67. But that specter cannot override what the text of the provision plainly requires. "It is not the province of this court ... to strike the proper balance between transparency and voter privacy. That is a policy question properly decided by the legislature, not the courts, and Congress has already answered the question by enacting [the NVRA's public-inspection provision]." *Project Vote*, 682 F.3d at 339.


B.

The court also finds that Secretary Merrill must send to GBM in digital form all of the records it has

17

requested.[1]   Time is now of the essence, through no
fault of GBM (which filed its complaint in February
2022, with a trial not until late July).   Alabama's
voter-registration deadline is 14 days before an
election.   *See* Ala. Code § 17-3-50.   That means that
the registration deadline for the November 8 election
is October 25, 2022.   And, of course, outreach to
voters must be conducted *before* the registration
deadline in order to be effective.   The limited window
remaining in which GBM can feasibly conduct its
outreach efforts is relevant to the court's analysis--
and has a substantial impact on GBM's operations.
Indeed, GBM's voter-outreach efforts have already been
impeded by its lack of access to the voter records it
first requested in spring 2021, such that its

---

1. Secretary Merrill has waived the argument that
the NVRA does not require him to disclose records
created more than two years prior to GBM's request,
which is, in any event, of dubious merit.   *See Ill.
Conservative Union v. Illinois*, 2021 WL 2206159, at *7
n.3 (N.D. Ill. June 1, 2021) (Ellis, J.); *Jud. Watch,
Inc. v. Lamone*, 399 F. Supp. 3d 425, 441 (D. Md. 2019)
(Hollander, J.).

volunteers "cannot be as effective as we might have been ... had we had th[ose] records some months ago." July 29, 2022 Rough Draft Trial Tr. at 38.

The NVRA's public-inspection provision is not simply about the ability to inspect voter records. Inspection need not be--and generally is not--an aim unto itself. Rather, the right to access voter records serves as a necessary foundation for a broad array of opportunities to engage and to make use of those records as the requesting party sees fit. Here, the court heard trial testimony discussing GBM's extensive voter-outreach efforts, including its ongoing work to register individuals with felony convictions who are eligible to vote under Alabama state law. *See id*. at 15-29.

It is undisputed that the other available methods of providing access--namely, printing the records on paper and providing those paper copies to GBM, or allowing GBM to examine securely the records on a

19

computer in Secretary Merrill's office--would impose costs on GBM that emailing the records or providing them via a data-sharing tool would not, in terms of both financial outlays and logistical coordination.[2] Given GBM's clear focus on registering eligible voters, those barriers would unduly interfere with the NVRA's express commitment to "establish[ing] procedures that will increase the number of eligible citizens who register to vote," "protect[ing] the integrity of the

_____

2. The court notes that these alternate methods would also impose additional costs on Secretary Merrill as compared to providing the records digitally.  For example, Secretary Merrill would have to format them in a manner suitable for printing and then actually print them out.  According to the Secretary's estimate of the amount of voter information that can fit on a page, the information GBM has requested would fill well over 100,000 printed pages.  Similarly, if he allowed a GBM agent to view the records on a computer in his office, one of his staff would have to supervise that agent.

This factual context raises concerns as to Secretary Merrill's motivations.  The court is hard-pressed to furnish a reason why he would refrain from sending the records to GBM in digital form except to frustrate the aims of the public-inspection provision by making it more difficult and costly for GBM to access the records to which it is entitled.  Use of these alternative methods would further delay provision of the records GBM seeks.

electoral process," and "ensur[ing] that accurate and
current voter registration rolls are maintained."   52
U.S.C. § 20501(b).

Secretary Merrill points out that the text of the
public-inspection provision does not specifically
provide for digital access.  That much is true, and the
court does not hold that the provision always requires
digital access.  Instead, it holds that the provision
requires digital access in the specific circumstances
of this case, where the records are already kept in
digital form, where providing them in any other form
would unduly interfere with the NVRA's express
purposes, and where the window of time before the
registration deadline for the next election is so slim.
To hold otherwise would be to sanction precisely the
kind of "administrative chicanery ... [and]
inefficiencies" that the NVRA was designed to prevent.
*Project Vote*, 682 F.3d at 335.  The court would be
obliged to avoid such a result even if the plain

meaning of the provision's text seemed to require that
outcome, which here it does not. *See Bailey v. USX
Corp.*, 850 F.2d 1506, 1509 (11th Cir. 1988) ("While it
is true that the language of a statute should be
interpreted according to its ordinary, contemporary and
common meaning, this plain-meaning rule should not be
applied to produce a result which is actually
inconsistent with the policies underlying the statute."
(citation omitted)); *United States v. Am. Trucking
Ass'ns*, 310 U.S. 534, 543 (1940).

Secretary Merrill also argues that the court should
interpret the public-inspection provision in light of
other statutes in which Congress "used ... the phrase
'public inspection' to refer to an in-person viewing."
Def.'s Pretrial Brief (Doc. 80) at 40.  As with the
NVRA's exclusion of programs related to the removal of
felons from its 90-day bar on removal activities,
however, one might infer from the fact that these
statutes specify that public inspection shall occur in

22

an office or other discrete location that, if Congress had intended to so limit the scope of the NVRA's public-inspection provision, it would have said so.[3]


C.

Finally, the court finds that Secretary Merrill must provide the records GBM has requested for a reasonable cost.

The NVRA does not provide that the States may

_____

3. *See* 16 U.S.C. § 410mm(b) ("The map shall be on file and available for public inspection in the offices of the National Park Service, Department of the Interior, and the Office of the Superintendent, Great Basin National Park, Nevada."); 16 U.S.C. § 1244(a)(1) ("[T]he right-of-way for such trail shall comprise the trail depicted on the maps ... which shall be on file and available for public inspection in the office of the Director of the National Park Service."); 26 U.S.C. § 6104(a)(1)(A) (providing that documents "shall be open to public inspection at the national office of the Internal Revenue Service"); 26 U.S.C. § 6110(a) ("[T]he text of any written determination and any background file document ... shall be open to public inspection at such place as the Secretary may by regulations prescribe."); 42 U.S.C. § 10711(a)(3) ("The report of the annual audit shall be filed with the Government Accountability Office and shall be available for public inspection during business hours at the principal office of the Institute.").

charge for public inspection and its express inclusion of a cost provision for photocopying, along with Congress's decision to include cost provisions in other record disclosure laws such as the Freedom of Information Act, *see* 5 U.S.C. § 552(a)(4), might suggest that they may not. *See Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1351 (N.D. Ga. 2016) (Duffey, J.) ("The absence of a cost provision in the public inspection provision of the NVRA--and its inclusion in other record disclosure laws--suggests Congress intended States to shoulder the burden [of providing public inspection]."). Secretary Merrill conceded as much at trial. When the court asked him whether the State could charge for the costs of maintaining a reading room, he replied that "the statute does not allow the State to charge for any cost associated with public inspection." July 29, 2022 Rough Draft Trial Tr. at 212.

Nonetheless, GBM does not argue that the Secretary

24

*must* provide the requested records for free.  At trial, GBM indicated its willingness to pay "reasonable costs" for accessing digital records, including the costs of a thumb drive to transfer information or of the staff time required to execute a request.  *See id.* at 205, 207-08.  For his part, the Secretary has expressed concern about the logistical difficulties that might arise should there be a marked increase in requests for records due to changes in their cost.  *See id.* at 210-11.

The court takes that concern seriously.  While some States may offer access to voter records for free, the court declines to order the Secretary to do so here. Given the importance of GBM receiving the records to which it is entitled in advance of the October 25 voter-registration deadline, the Secretary must turn over the requested records in full immediately.  The parties will then have 14 days after the November 8 election to reach an agreement as to a reasonable fee

for the records requested by and turned over to GBM,
based on the actual costs the Secretary incurs in their
production to GBM.  If no agreement is reached, the
court will order additional briefing and determine a
reasonable cost for the specific sets of records at
issue in this case.

Looking ahead, however, the court also declines to
intervene and determine a full schedule of reasonable
costs for the Secretary's future production of voter
records under the NVRA.  To ensure that the purposes of
the NVRA are not frustrated, however, whatever schedule
he develops for reasonable costs must be tethered to
the actual costs he incurs in producing responsive
voter records.

To the extent that Alabama law provides otherwise
(though the court doubts that it does), *see* Ala. Code
§ 17-4-38(b) ("[T]here shall be a uniform charge for
the production of voter lists. The reproduction costs
of the basic electronic copy of the statewide file

shall be reasonable as determined by the Secretary of State and a fee schedule shall be conspicuously posted in the office of the Secretary of State."), it is preempted by the NVRA. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005) (recognizing that the NVRA "overrides state law inconsistent with its mandates"); *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013) ("The assumption that Congress is reluctant to pre-empt does not hold when Congress acts under [the Elections Clause], which empowers Congress to 'make or alter' state election regulations." (quoting U.S. Const. art. I, § 4, cl. 1)).

* * *

An appropriate judgment will be entered.

DONE, this the 4th day of October, 2022.

                    /s/ Myron H. Thompson
                    UNITED STATES DISTRICT JUDGE