# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GREATER BIRMINGHAM MINISTRIES;<br><br>Plaintiff,<br><br>v.<br><br>WES ALLEN, in his official capacity as Secretary of State of the State of Alabama,<br><br>Defendant. | Civil Action No. 2:22-cv-00205-MHT-SMD<br><br>**SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Greater Birmingham Ministries ("GBM") files this Second Amended Complaint for Declaratory and Injunctive Relief against Defendant Wes Allen, in his official capacity as the Alabama Secretary of State ("Defendant"), for violating the National Voter Registration Act of 1993 ("NVRA"). Plaintiff alleges as follows:

## INTRODUCTION

1. Defendant has failed to comply with the NVRA for years. Defendant's failure to make records available in accordance with the NVRA has undermined GBM's voter outreach efforts ahead of multiple federal elections, including the 2026 election cycle, and has violated the letter and spirit of the NVRA's Public Disclosure Provision to ensure the accuracy of the voter rolls.

2. As a part of its organizational mission to promote civil rights in and around Birmingham and the State of Alabama, GBM offers voter registration assistance to Birmingham community members and other Alabamians. This work requires the list of individuals who have been purged from the voter rolls, so that GBM can reach out to those community members and assist those who need to re-register. Additionally, this information enables GBM to monitor

1

Alabama's compliance with the NVRA's prohibition against removing individuals from the voter rolls simply for not voting. *See* 52 U.S.C. § 20507(b)(2).

3. GBM also engages in voter outreach programs for people with felony convictions to help them understand changes to Alabama's felony disenfranchisement law and the voting rights restoration process. To accomplish this, GBM must know which individuals have been removed from Alabama's voter rolls or denied voter registration because of a felony conviction. GBM uses this information to conduct outreach to individuals who are eligible or may become eligible to vote, help them apply for voting rights restoration (where applicable), and encourage them to register or re-register to vote (where eligible). GBM's work also helps ensure that Alabama is complying with the NVRA's mandate that each state "shall . . . ensure that any eligible applicant is registered to vote" in federal elections if the eligible applicant timely submits a "valid voter registration form." 52 U.S.C. § 20507(a)(1).

4. To further these efforts and pursuant to Section 8 of the NVRA, Plaintiff submitted records requests to Defendant, seeking all: (1) "voter registration applicants who were rejected or otherwise not added to the official list of eligible voters," (2) "voters canceled, purged, or otherwise removed from the official list of eligible voters," and (3) Alabamians "denied voter registration or dropped from the Alabama voting rolls . . . due to a felony conviction."

5. Defendant has violated, and continues to violate, the NVRA by refusing to make the requested records available for meaningful public inspection within the meaning of the statute, or in the alternative, available to be photocopied, at a reasonable cost.

6. Defendant's continued failure to make these records available in accordance with the NVRA has harmed GBM's efforts to ensure the accuracy of the voter rolls and conduct voter outreach for numerous past federal election cycles and ahead of the 2026 federal elections. The next federal primary in Alabama will occur on May 19, 2026; the next federal primary runoff will

occur on June 16, 2026; and the next federal general election will occur on November 3, 2026.

7. Plaintiff GBM brings this suit to enforce its rights under the NVRA.

## JURISDICTION AND VENUE

8. This action is brought pursuant to the private right of action established by 52 U.S.C. § 20510(b) to address the deprivation of rights secured by the NVRA.

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. It also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, to grant the declaratory relief requested.

10. This Court has personal jurisdiction over Defendant in his official capacity because he is a citizen and elected officer of the State of Alabama and his principal place of business is in Montgomery, Alabama.

11. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant is subject to the Court's personal jurisdiction in this District.

12. An actual and justiciable controversy exists between Plaintiff and Defendant.

## PARTIES

**A.   Plaintiff**

13. Greater Birmingham Ministries ("GBM") is a nonprofit organization founded in 1969 to advocate for civil rights in the Birmingham area. GBM's mission includes advancing and promoting the right to vote for people within the Birmingham and broader Alabama community, including individuals with felony convictions. GBM regularly engages in voter registration and outreach to people with felony convictions to encourage them to register to vote and then to vote. GBM works to ensure that Alabama complies with state and federal voting rights laws and advocates against unlawful denials of the right to vote.

**B.     Defendant**

14.     Defendant Wes Allen is the Secretary of State of Alabama and is sued in his official capacity. Defendant Allen is the chief elections officer of Alabama. Ala. Code § 17-1-3(a). He is tasked with ensuring the state's compliance with the NVRA. Ala. Code § 17-4-60(a).

### FEDERAL STATUTORY BACKGROUND

15.     The NVRA was enacted in 1993 to "increase the number of eligible citizens who register to vote," "enhance[] the participation of eligible citizens as voters," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). In passing the NVRA, Congress found that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3).

16.     To further its stated goals, the NVRA requires states to comply with certain baseline standards for the administration of voter registration to "ensure that any eligible applicant is registered to vote." 52 U.S.C. § 20507(a)(1).

17.     Accurate and complete voter rolls are necessary to guarantee that eligible voters are properly registered and able to vote. As part of the NVRA's overall framework to ensure that states are keeping accurate and complete voter rolls, the NVRA imposes strict transparency requirements. In particular, it requires that:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1) ("Public Disclosure Provision").

18. The Public Disclosure Provision enables the public to monitor states' compliance with the NVRA's requirements, and it thereby furthers the federal legislation's purpose of ensuring effective, accurate, and non-discriminatory voter registration and list maintenance practices.

## STATEMENT OF FACTS

### *GBM's 2021 Purged Voter Request*

19. On or about May 17, 2021, GBM submitted a records request to the Secretary of State for a list of every voter removed from the active voter rolls after the 2020 election and their contact information for every county in Alabama, at no cost to GBM and in a timely manner. ECF No. 72-56 ("Purged Voters Request").

20. GBM made this request pursuant to Section 8 of the NVRA, explaining that it made the Purged Voters Request in its effort to guarantee that no qualified Alabama voter be purged without just cause and adequate notice.

21. On May 25, 2021, the Secretary of State acknowledged receipt of the request. ECF No. 72-57. Although the Secretary of State offered to allow GBM to inspect the records in person to "determine if it is a list [GBM] would like to purchase," he stated that his office would only provide the records to GBM at a cost of $1,331.40, or 1 cent per name for 133,140 names. The Secretary of State made the cost assessment pursuant to Ala. Code § 17-4-35, which provides that voter registration lists be made public at a "reasonable cost." This assessment was not tied to any reproduction costs that the Secretary of State would incur in providing these records to GBM. The Secretary of State alleged that "[n]othing in the NVRA or U.S. Code provides for our office to produce and make copies of this data at no cost." ECF No. 72-57.

22. On or about June 11, 2021, GBM objected to the Secretary of State's request for payment for the Purged Voters Request, explaining that Section 8 of the NVRA only permits

charging for covered records to the extent such charges reflect reasonable photocopying costs. ECF No. 72-58. Thus, GBM explained that the NVRA does not permit the Secretary of State to charge for the production of an electronic list that would not require photocopies or any costs of reproduction and renewed its Purged Voters Request.

23. On June 23, 2021, the Secretary of State responded to GBM's June 11th letter, confirmed that his office had the requested records available in electronic form, and renewed his refusal to fulfill GBM's Purged Voters Request absent payment. ECF No. 72-59. The Secretary of State's office asserted that it could charge for any request under state law and asserted that the NVRA permitted the Secretary of State to charge 1 cent per name for the electronic records.

24. On September 7, 2021, GBM re-stated that the Secretary of State's decision to charge for electronic production of these records is not proper under the NVRA. ECF No. 72-60.

25. On September 15, 2021, the Secretary of State again offered to allow GBM to inspect the records in person but again refused to produce the Purged Voters Request electronically without payment. ECF No. 72-61.

### *GBM's 2021 Felony Records Request*

26. In 2017, Alabama passed a law creating a list of felony convictions that take away a person's right to vote. *See* H.B. 282 (2017) ("Felony Voter Disqualification Act"). This law confirmed the eligibility of tens of thousands of Alabama citizens with past felony convictions who previously lacked clarity on their right to vote. In public statements from the time, former Alabama Secretary of State John Merrill explained that while he would continue pre-existing efforts to register Alabamans to vote, but he would not "notify[] a small percentage of individuals who at some point in the past may have believed for whatever reason they were disenfranchised" about the

law change.[1]

27. In 2024, Alabama added to that list of felony convictions that take away a person's right to vote. *See* H.B. 100, Reg. Sess. (Ala. 2024).

28. Upon information and belief, citizens with prior felony convictions continue to be wrongfully denied voter registration, in part because of the Secretary's lack of public education and lack of effective guidance to county registrars following these changes in Alabama law.

29. The Secretary of State is tasked with ensuring that voters with disqualifying felony convictions are denied voter registration and removed from the rolls. Alabama law states that individuals convicted of a disqualifying felony offense shall be purged from the statewide voter registration list on a continuous basis, and that the Secretary of State "may promulgate rules . . . as necessary to implement [the] section." Ala. Code § 17-4-3(g).

30. GBM's outreach efforts aim to identify and correct erroneous denials of voter registrations, inform Alabama citizens with felony convictions of their eligibility to vote and the process for rights restoration (where applicable), and assist voters with felony convictions in accessing the ballot box. To do this, GBM runs voter outreach programs to work with eligible members of its community with prior felony convictions to apply for Certificates of Eligibility to Register to Vote from the Alabama Bureau of Pardons and Paroles and/or register to vote.

31. GBM regularly identifies voters who have been unlawfully removed from the voter rolls or denied registration because of the voter's felony conviction. To run this programming and to ensure that, pursuant to the NVRA, all eligible applicants are properly registered to vote in Alabama, GBM needs to know which voters have been removed from the voting rolls or denied

---

[1] Sam Levine, *Alabama Won't Help Disenfranchised Citizens Understand If They Can Now Vote*, Huffington Post (June 21, 2017), https://www.huffpost.com/entry/alabama-moral-turpitude_n_594a8335e4b0177d0b8af45f.

7

registration because of felony convictions.

32. When GBM renewed its Purged Voters Request on or about June 11, 2021, GBM additionally requested a list of voter registration applicants and registered voters who have been deemed ineligible and either denied registration or removed from the rolls. ECF No. 72-58.

33. Like its Purged Voters Request, GBM expressly made the request pursuant to Section 8 of the NVRA.

34. On June 23, 2021, the Secretary of State denied this request, alleging that it goes beyond the scope of the NVRA. *See* ECF No. 72-59 ("The NVRA relates to programs and activities for the purpose of ensuring the accuracy and currency of official lists of eligible voters. Your most recent request moves well beyond the NVRA.").

35. On September 7, 2021, GBM renewed and narrowed this request under the NVRA, and also objected to the Secretary of State's assessment that these records are outside of the purview of the NVRA. In its September 7, 2021 letter, GBM narrowed its second request to only include registration applicants whose voter registration applications were rejected because of a felony conviction and voters who were removed from the rolls by reason of a felony conviction (the "Felony Records Request"). ECF No. 72-60. GBM's September 7, 2021 letter noted that GBM would explore a remedy in federal court if the Secretary of State's office continued its noncompliance with the NVRA.

36. On September 15, 2021, the Secretary of State replied and renewed his refusal of GBM's Felony Records Request stating, "[w]e stand by [our previous letter], and do not feel the need to further elaborate." ECF No. 72-61.

*GBM's 2021 and 2022 Notice Letters*

37. On December 8, 2021, GBM formally notified the Secretary of State that his office's failure to produce records in response to GBM's Purged Voters Request and Felony

8

Records Request violated Section 8 of the NVRA. ECF No. 72-62 ("First Notice Letter"). First, GBM notified the Secretary of State that his office's denial of the Purged Voters Request without payment violated Section 8(i) of the NVRA, which does not permit the assessment of costs for production of covered records, except for reasonable photocopying costs. *Id.* at 2 (citing 52 U.S.C. § 20507(i)(1)). Where the records can be made available electronically without any reproduction costs, the Secretary of State must do so without imposing fees unrelated to photocopying. Second, GBM notified the Secretary of State that his office's rejection of the Felony Records Request also violated Section 8(i) of the NVRA, which requires states to make "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" available for public inspection. *Id.* at 2. The rejection of registrations and removal of voters due to felony conviction falls squarely within the scope of the Public Disclosure Provision.

38. The Secretary of State did not respond to GBM's First Notice Letter.

39. January 24, 2022 marked 120 days before the next federal election in Alabama, triggering a shorter 20-day notice period under the NVRA. 52 U.S.C. § 20510(b)(2). Because the Secretary of State had not responded to the First Notice Letter, GBM again notified him, through counsel, on January 24, 2022 that his failure to respond to the Purged Voters Request and Felony Records Request constituted an ongoing violation of the NVRA. ECF No. 72-63 ("Second Notice Letter").

40. GBM re-asserted the nature of the NVRA violations and notified the Secretary of State of the 20-day notice period triggered by an impending federal election under the NVRA. *Id.* GBM notified the Secretary of State that his office had 20 days from its receipt of the Second Notice Letter to respond to GBM's requests before GBM would seek declaratory and injunctive relief. *Id.* at 1, 3.

9

41. Monday, February 14, 2022 marked twenty days from the Secretary of State's receipt of the Second Notice Letter.

42. Plaintiff filed its Complaint for Declaratory and Injunctive Relief on February 22, 2022. ECF No. 1. Plaintiff later filed a First Amended Complaint for Declaratory and Injunctive Relief on June 2, 2022. ECF No. 35.

43. On June 26, 2024, the Eleventh Circuit Court of Appeals issued an opinion upholding the District Court's finding that the Felony Records Request was covered by the NVRA's Public Disclosure Provision. *Greater Birmingham Ministries v. Sec'y of State for Alabama*, 105 F.4th 1324, 1331-32 (11th Cir. 2024). The Eleventh Circuit also held that the NVRA required the Secretary of State to make records responsive to the Felony Records and Purged Records Requests available for public inspection and photocopying (where available), but it did not require the Secretary to make those records available electronically. *Id.* at 1332-35. The Eleventh Circuit reversed and remanded the case for proceedings consistent with its opinion. *Id.* at 1335.

44. Following this decision, the Secretary of State has not corrected the ongoing violations of the NVRA and has maintained that these records are not available to be printed and photocopied, and that adequate "public inspection" necessitates only limited and restrictive viewing of the records in-person.

*GBM's 2024 and 2025 Records Requests*

45. On August 16, 2024, GBM submitted a records request (dated August 15, 2024) to the Secretary of State for a list of "[a]ll voter registration applicants who were rejected or otherwise not added to the official list of eligible voters" and "[a]ll voters canceled, purged, or otherwise removed from the official list of eligible voters" from June 2021 through the present ("Rejected and Purged Records Request") Ex. 1. GBM stated that it preferred to receive the records in

10

electronic format, but that it was "happy to confer about other ways in which [GBM could] meaningfully access [those] records" if that was not possible. *Id.*

46. On September 4, 2024, Defendant's Office responded, confirming that the requested records were available under the NVRA, but stating that it would not provide those records electronically. Ex. 2. Defendant's Office also stated that while the NVRA does mandate disclosure of photocopied records, where available, "[t]he requested individualized voter records are not maintained in a format that makes them available for photocopying." *Id.* As such, Defendant's Office offered only one way to access the records: "public inspection" pursuant to its policy.[2] *Id.* Defendant's Office then invited GBM to "provide specific recommendations" if it found the SOS's public inspection policy "to insufficiently comply with the law." *Id.*

47. Upon information and belief, the requested records are, in fact, available in a format which can be printed and photocopied.

48. Upon information and belief, Defendant also does not always require those who request records pursuant to the NVRA to view the records in-person, pursuant to the "public inspection" policy, and he instead may offer electronic copies at a cost. In other words, it is Plaintiff's belief that Defendant selectively enforces his "public inspection" policy.

49. On December 9, 2024, GBM replied, requesting dates upon which it could view the requested records in person pursuant to the State's asserted policy and providing recommendations to the SOS's policy. Ex. 3. GBM's suggestions included allowing its representatives to bring in a printer so that they could print the requested records and allowing its representatives to bring in cell phones or laptop computers so that they could conduct outreach to the affected voters. *Id.*

50. On January 6, 2025, Defendant's Office responded, providing dates upon which

---

[2] *Public Inspection of Voter Registration Information*, Ala. Sec'y of State, https://perma.cc/7FJ7-SW6Q (last visited Oct. 15, 2025).

11

GBM could view the requested records in person and rejecting all of GBM's recommendations to the SOS's policy. Ex. 4.

51. On February 26, 2025, a GBM Board Member submitted a records request to the Secretary of State seeking "All Alabamans [sic] (name, date of birth, address, phone number, race, etc) denied voter registration or dropped from the Alabama voting rolls from June 11, 2021 through the present due to a felony conviction." Ex. 5 ("Felony Records Request").

52. On March 11, 2025, the Secretary of State's Deputy General Counsel, Meredith Blackburn, responded by email, stating that these records were not available under Alabama law, but were available for "public inspection" under the NVRA. Ms. Blackburn also stated that the Secretary's Office did not interpret the Board Member's request as a request for public inspection, but if that was not the case, the Board Member should "contact Secretary of State General Counsel Michael L. Jones, Jr. at (334) 353-7857 or mike.jones1@sos.alabama.gov to arrange a date and time" for public inspection.

53. Following that instruction, the Board Member contacted Mr. Jones via email to request in-person review of those records on June 30, July 7, July 15 and via telephone on July 17 (during which she left a voicemail, as the call was not answered). She did not receive a response from Mr. Jones to any of those emails or the telephone call. The Board Member also copied Ms. Blackburn on her July 15th email to Mr. Jones, but the Board Member likewise did not receive a response from Ms. Blackburn.

54. Because she did not receive a response, on August 11, 2025, the Board Member contacted Ms. Blackburn regarding the requested in-person review through her counsel.

55. On August 14, 2025, Ms. Blackburn responded, stating that the Board Member's emails were likely "filtered as spam by the state's email system." She did not address the unreturned phone call. Ms. Blackburn also offered dates upon which the Board Member could conduct "public

12

inspection," which the Board Member accepted.

### *GBM's 2025 Public Inspection Attempts*

56. On April 9, 2025, two GBM staff members attempted to view the Rejected and Purged Records requested on August 16, 2024. These GBM staff members spent three hours driving to and from Montgomery from Birmingham to review the requested records in person. They were given a four-hour block in which they could view the records of 2,092,165 individuals that they were to be shown on the computer screen, while monitored by a representative from the Secretary's Office the entire time. When they arrived, these GBM staff members were placed in front of a laptop computer screen which did not display the requested records. Both they and the Secretary's representative spent approximately 30 minutes attempting to find the records on the computer. When neither could locate the records, the Secretary's representative called for IT support. This support person was able to locate and pull up the records on the computer screen. These volunteers spent the rest of their allotted four-hour block attempting to understand these records, which included numerous codes for which the volunteers were not given a key. The Secretary's representative also did not know what these codes signified, so she called in an additional support person who could explain the meaning of these codes. Additionally, these volunteers attempted to understand the bounds of the Secretary's public inspection policy during their allotted block by asking questions including whether they could come outside of business hours (no), whether they could come on weekend days (no), and whether they could bring more than two volunteers at a time (no).

57. On August 29, 2025, the GBM Board Member attempted to view the Felony Records she had requested on February 26. 2025. This Board Member spent three hours driving to and from Montgomery from Birmingham to conduct in-person review. She was given a four-hour block in which she could take notes, by hand, of the public records she was shown on a computer

13

screen. She was allowed to bring in a pen and spiral-bound notebook but was not allowed to bring in any electronics. She was monitored by a representative from the Secretary's Office the entire time. This Board Member will utilize these records to ensure the accuracy of the Secretary's list maintenance practices by ensuring that Alabamians with past felony convictions were not purged or rejected erroneously. She will also conduct outreach to these voters to help them understand their path to voting rights restoration and, where eligible, voter registration.

58.  When she arrived, the Board Member was placed in front of a computer screen which did not display the requested records. Both she and the Secretary's representative spent approximately 15 minutes attempting to find the records on the computer. When neither could locate the records, the Secretary's representative called for IT support. This support person took approximately 20-30 minutes to arrive, and then took a few minutes to pull up the records on the computer screen. The Secretary's representative informed the Board Member that the delay would not impact her four-hour session, but it had nonetheless taken nearly an hour of her time.

59.  In approximately 3 hours (following the delay), the Board Member was able to write down the individualized voter information for 120 Alabamians. The Board Member estimates that it would take approximately 51 in-person visits, with two volunteers at each session, for four hours at each session, with no breaks at all, to copy down all individualized voter information responsive to her request. When the Board Member asked if the Secretary of State's representative would print the requested records, photocopy them for her, and sell them to her, the representative declined her offer and replied that the software used to create the list, Microsoft Access, could not be printed and copied. When the Board Member also asked if the Secretary of State's representative would sell her electronic copies of these records, the representative also declined.

60.  On September 11, 2025, two GBM volunteers attempted to view the Felony

14

Records. Because these volunteers were particularly interested in results from Wetumpka, Alabama, they filtered the results to show only those for Wetumpka residents. Once sorted, the records displayed 156 such individuals. Both volunteers spent four hours copying down individualized voter information for those individuals, but could not finish in one four-hour session. One of the volunteers returned on September 16, 2025 for another hour to complete copying down the individualized voter information. These volunteers spent time driving to and from Wetumpka, gas money, and parking money to attend these visits. Their requests to purchase the records, receive the records electronically, and photograph the records were all denied.

61. On September 16, 2025, two different GBM volunteers attempted to view the Felony Records. Because these volunteers were particularly interested in results from Birmingham, Alabama, they filtered the results to show records only for Birmingham residents. Both volunteers spent four hours copying individualized voter information for approximately 200 such individuals, which was not the complete list of Birmingham residents. Because they were unable to copy the entire list during their allotted time, either they or other GBM volunteers will need to complete copying down this voter information. They were told that they could not photocopy or photograph the requested records, which significantly hampered their ability to efficiently review those records.

62. GBM plans to continue these in-person visits to view the requested records, despite the drain on their staff and volunteers' time and money, so that they can ensure that Defendant's list maintenance and voter registration practices are effective, accurate, and non-discriminatory, unless GBM can obtain these records in photocopied or electronic format, at a reasonable cost.

## CAUSE OF ACTION

**Count 1: Violation of the National Voter Registration Act, 52 U.S.C. § 20501** *et seq.*

63. Plaintiff re-alleges, as though fully set forth in this paragraph, the allegations set

forth above.

64. The records sought by the Plaintiff are within the possession, custody, and control of Defendant.

65. The NVRA's Public Disclosure Provision requires that "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," such as those requested by Plaintiffs, be "[made] available for public for inspection and, where available, photocopying at a reasonable cost." 52 U.S.C. § 20507(i)(1).

66. Defendant does not deny that the records responsive to GBM's requests fall within the scope of the NVRA. *Accord Greater Birmingham Ministries v. Sec'y of State for Alabama*, 105 F.4th 1324 (11th Cir. 2024) ("*GBM v. Alabama*"). Instead, Defendant maintains that GBM may *only* inspect these records in person at his office.

67. Defendant maintains that these records are not kept in a format which may be printed and photocopied. Upon information and belief, these records are, in fact, available in a format which can be photocopied. Defendant maintains these records on a computer program – Microsoft Access – which can, in fact, be printed and photocopied. To Plaintiff's knowledge, the Secretary has never stated that there was no printer in his office.

68. Upon information and belief, Defendant does not always require those who request records pursuant to the NVRA to view the records in person, pursuant to the "public inspection" policy, but instead offered electronic production of those records at a cost. In other words, it is Plaintiff's belief that Defendant selectively enforces his "public inspection" policy when his practices are under close scrutiny.

69. The Secretary of State's restrictive "public inspection" policy fails to provide the public with meaningful access to covered records, in violation of the NVRA's Public Disclosure

16

Provision. Under the Secretary's policy, GBM members are unable to meaningfully inspect the covered records due to time, personnel, location, technological, and other restrictions. Under his policy, GBM is unable to spend time with the records, refer back to them, and cross-check them to ensure that the Secretary's list maintenance and voter registration practices are effective, accurate, and non-discriminatory. GBM members and representatives are also unable to meaningfully access the covered records due to the Secretary's failure to timely respond to records requests and the Secretary's provision of only limited access to those records once his Office does respond.

70.     The Secretary of State's refusal to provide GBM with the requested records in printed format, to be photocopied, violates the NVRA's Public Disclosure Provision. The Secretary relies on the NVRA's language that he must provide photocopied records only "where available," 52 U.S.C. § 20507(i)(1), to withhold records that are plainly available. The Secretary's refusal to print and photocopy these records violates the NVRA.

71.     To the extent that Defendant Allen could charge any fee for the production of photocopied records – which he maintains are unavailable in that format – those fees must be "reasonable" reproduction costs. Defendant's potential assessment of 1 dollar per page pursuant to his current fee schedule[3] would be unreasonable. The NVRA only allows states to assess a "reasonable cost" for photocopying. *See* 52 U.S.C. § 20507(i)(1).

72.     Plaintiff complied with the NVRA's notice requirement by providing Defendant with written notice of the violation on December 8, 2021 and again on January 24, 2022. Defendant has failed to correct the violation within the twenty-day notice period set forth in Plaintiff's Second Notice Letter, pursuant to Section 11(b) of the NVRA. 52 U.S.C. § 20510(b)(2). Plaintiff's suit

---

[3] *Public Records Request*, Ala. Sec'y of State, https://www.sos.alabama.gov/public-records-request (last visited Nov. 13, 2025).

filed February 22, 2022 followed.

73.   Defendant has violated, and continues to violate, the NVRA by refusing to make the requested records available in accordance with the NVRA, as GBM requested on February 22, 2022. GBM has continued to notify Defendant of the ongoing nature of the NVRA violation due to the insufficiency of his "public inspection" policy and his refusal to provide photocopied records. *See, e.g.*, Ex. 1; Ex. 3.

74.   Defendant has refused to remedy this ongoing NVRA violation, failing to provide GBM with the meaningful public inspection of the requested records within the meaning of the NVRA, or in the alternative, photocopied records, at a reasonable cost.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and:

A.   Declare that Defendant is in violation of the NVRA by refusing to make the requested records available for meaningful public inspection, or in the alternative, available to be photocopied, free of unreasonable costs unrelated to reproduction;

B.   Order Defendant to timely make the requested records available to Plaintiffs for meaningful public inspection, or in the alternate, to be photocopied, free of unreasonable costs unrelated to reproduction;

C.   Retain jurisdiction over this matter to ensure Defendant's compliance with his obligations to produce the requested records pursuant to the Court's order and the NVRA;

D.   Award Plaintiffs their reasonable costs and attorneys' fees incurred in bringing this suit pursuant to 52 U.S.C. § 20510(c); and

E.   Grant any and all relief this Court deems just and proper.

Respectfully submitted this 13th day of November, 2025.

*/s/ Alice Huling*
Alice Huling*
Danielle Lang*
Blair Bowie*
Valencia Richardson*
Ellen Boettcher**
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005
Tel.: (202) 736-2200
Fax: (202) 736-2222
ahuling@campaignlegal.org
dlang@campaignlegal.org
bbowie@campaignlegal.org
vrichardson@campaignlegal.org
eboettcher@campaignlegal.org

*\* admitted pro hac vice*
*\*\* pro hac vice motion forthcoming*

J. Mitch McGuire
McGuire & Associates, LLC 31
Clayton Street
Montgomery, AL 36104
Tel.: 334-517-1000
Fax: 334-517-1327
jmcguire@mandabusinesslaw.com